Good morning, Your Honors. My name is Rip Wathen and I represent Marcus and Susan Gerlach in the matter before the court today. The case is fairly straightforward in the predicate factual background. Mr. and Mrs. Gerlach applied for a very simple mooring buoy out in front of their house on Bainbridge Island. This process began in 2005. They were not issued a permit until 2011 after several procedural hurdles were placed before them. What ultimately occurred is after they had exhausted their administrative remedies, essentially on the eve of the administrative hearing, the City of Bainbridge Island relented and agreed to provide them with a permit they had sought some six years earlier. They applied for the permit under basically the same identical terms as had been applied for in 2005, and a permit was issued five weeks later. After having gone through enormous expense both personally and professionally to Mr. Gerlach, who is an attorney himself, who had to bear the laboring war of much of the background work to get this matter through. There was some apparent evidence of what would appear to be extortion or corruption, correct? Yes, Your Honor. We believe that there... The individual asserted or seemed to assert, based on the evidence lodged by Mr. Gerlach, that a permit would be forthcoming should the buoy permit... Should he be allowed to wash windows or do whatever his business was, right? Yes, Your Honor. All right, but it seems like all that was merged to your client's benefit at the end of the process because he ultimately got his permit and the individual was never apparently hired to do any windows. So the city contends that the damages, if there were any, would have occurred before the merging, as I called it, and so there's no remedy here, correct? Yes, Your Honor. I believe that is the city's argument. However, our argument is different. Under RCW 6440, this provides a separate and distinct remedy for damages that arise out of the delay in the permitting process. The administrative process was only the process which would have allowed the Gerlachs to obtain a permit itself. They could not have sought alternate damages in that administrative process, but Washington has adopted a separate statute which allows for damages for specifically delays in obtaining a permit. We've cited the court's case law that talks about delays in and of themselves can give rise to a cause of action under RCW 6440. Are there civil damages available in the state of Washington for corrupt activities by government officials? Yes, Your Honor, if they come through under 28 U.S.C. Sorry, I just drew out a blank. Under the Statute 1983, Section 1983, I apologize. I mean in state court. If I'm a local resident and I'm not getting good services from my local appointed or elected officials, is there damages or is that a case where there's immunity for what they may be doing or is there an exception of the immunity or how does that all work? I don't believe under this particular set of facts there would be a separate independent cause of action because at the end of the day, as this court has recognized, it was an unsuccessful attempt to extort a contractual relationship for future window cleaning. However, RCW 6440 does provide that remedy for damages caused by the delay that are occasioned upon this. Now, as we look at the overall picture. In Birnbaum v. Pierce County, didn't the Washington Court of Appeal find the 6440 authorized claims for damages only incurred after a cause of action under the statute arises? Is your point that the cause of action arises when he was first shaken down? Your Honor, I think the cause of action arises once you take into consideration the totality of the delay and that is the case that we've cited the court to. When does the cause of action arise? I think the cause of action arises within what a reasonable period of time it should take to process a permit. What's the evidence of a reasonable period of time? Your Honor, we didn't have an opportunity to develop that because as one of the prongs of our appeal is that we were denied adequate opportunity to conduct discovery. Keep in mind that this matter was filed originally in state court seeking state court damages and it was removed to the federal court. Within two months of the removal to federal court, this summary judgment was filed. We had an opportunity to exchange initial disclosures and we had served one set of discovery, but we were denied the opportunity to take any depositions whatsoever. Did you move under Rule 56D for additional time and identify to the district court what discovery you needed? Yes, Your Honor, we did and that motion was denied. Wasn't the discovery that was being sought the discovery of, I'm not sure I'm pronouncing his name right, was it Mocken? The city official's tax returns and how he was treating these independent contractors or employees, whatever they... That was a portion of the discovery that was outstanding. How is that relevant to the claim that the Gerlichs have for delay in the issuance of the permit? That part of discovery included that portion of discovery, but also a broader set of discovery that also... Let's just address the question I've asked you, which is how is it that this employee's tax returns, is it all relevant to their delay claim? The delay claims could come up, Your Honor, by virtue of one of the factual issues that was present was that the second solicitation came by virtue of an employee of Mr. Mashon's. When he was at the neighbor's house who had received the permit to put her buoy in in short order... To cut to the chase, let's assume that the employee was engaged in tax fraud or some sort of failure to remit employment taxes. How does that relate? What's the relevancy to the delay claim? Your Honor, perhaps I misspoke. We weren't seeking discovery of the employee's tax returns, but rather the discovery of Mashon's Window Cleaning Company, the company that actually engaged in... I'll accept the broader phrasing of the question. I still don't see what the relevance is. Your Honor, because one of the things that we would be able to establish is that this was part of a pattern in practice based upon business experience. From those taxes, we would go back and recreate whether or not there's a matrix that could be created by saying, these are the people who applied for permits in one category. I think what the judge is saying is that you delayed the case, not the city. That's kind of where I was going. And also, don't we view as abuse of discretion the district court's determination that this discovery that you sought was simply not relevant to the issues that were before the district court? Your Honor, the issue that was cited by the district court in the order only addressed the issue of the tax return, but failed to address the issue of the other outstanding discovery that was required. What other outstanding? You didn't give me an answer to this question. When did the cause of action arise? What is your allegation as to when it arose? Your Honor, I believe it would have been within a reasonable period of time. And what do you mean a reasonable period? Six years? One year? Three years? It took five weeks to issue the permit after the administration. Five weeks after he was shaken down by Manchin? Yes, Your Honor. I believe that's when the cause of action would accrue, because that gives us a baseline of showing this is what a reasonable permit should have been applied for. What discovery did you proffer on your 56D motion as to those five weeks? At that point in time, Your Honor, we were seeking to create this matrix to be able to establish a timeline. Were people who had applied for permits and Did you ask for discovery as to who had gotten buoy permits in the past and how long it had taken? Yes, Your Honor. Okay. Yes, and that's what we were attempting to do and then correlate that with the business records of the business to see if there was a correlation between the business records. One way to substantiate that would be through the tax returns and the supporting documentation to see if there was an overlap or a cause of action that would lie there. We were denied the opportunity to discover that prior to this court. I'm sorry to interrupt, but did you seek in negotiating the final settlement where the Gerlachs received the buoy permit any sort of compensation or special treatment for the delay? Your Honor, I was not a party to that original negotiation or original permit, but my understanding is that damages arising under RCW 6440 were specifically not included in that and could not have been a part of that original administrative process. Because I was frankly curious why your clients seemed to have received what they ultimately wanted, and, yes, there was inconvenience and, yes, there was delay, but then you came back to get more. Is that the reason? Yes, Your Honor. My understanding is that in the administrative process, that was not an available damage that could have been awarded to them. Perhaps that could have been part of a negotiated settlement, but I'm unaware of any such negotiations. Would you address the proximate cause issue on the Gerlachs 1983 claim? It wasn't Machen's decision to make the permit. Your Honor, this again goes to our discovery. We weren't allowed the opportunity to really focus and determine whether or not Machen had undue control over the other people. I thought you deposed his boss, or she offered an affidavit in which she said it wasn't his decision, that it's essentially I'm the decision maker. Your Honor, you're absolutely correct. She submitted that declaration. We weren't given the opportunity to depose her. We weren't given the opportunity to depose Mr. Machen himself. Besides the allegation that he must have had undue influence, is there any other evidence to establish that? Other than the declarations of both Mr. and Mrs. Gerlach establishing or showing that there was an attempt to force them into this contractual relationship. Counsel, I've let you run out over your time here. I'll give you a minute or two on rebuttal. Thank you, Your Honor. Let's hear from the city. Good morning, Your Honors. May it please the Court, Adam Rosenberg for the respondents, Mr. Machen. I'm joined by Josh Machen, his wife, Kristen, as well as the city of Bainbridge Island. The city has joined us? Through Mr. Machen. Okay, all right. Unless the Court would prefer otherwise, I want to talk about the claims procedurally and substantively, the continuance, and then the question of fees and sanctions to the extent there's time. Do you disagree with your learned friend that 6440 gives a cause of action for undue delay? I vehemently disagree with that. The cause of action accrues under RCW 6440.030 at the exhaustion of administrative remedies, which is the point of the final decision by the final decision maker, here the hearing examiner. So 6440 doesn't apply until the full five or six-year tedious experience has been gone through and the permit is denied or granted? That's what every court to look at it has said. That's Birnbaum, that's Coy, that's Brower, that's Calfus. So it's only after a denial of the permit that you can sue, and then from that point forward, not for the six years that it took to get the denial? Is that the way you read the statute? That's what Birnbaum specifically said. That was a four-year delay, and if you have a violation of a time limit set by law, then that itself is an act in which there would be a 30-day period to bring a 6440 claim. That was never alleged below. And not surprisingly, they say five-year delay. In reality, if you look at the record, they withdrew their 2005 permit. There was nothing pending for about four and a half years, and then they filed a second application under that programmatic process. So we're talking about two different processes with four years of nothing pending in between. They may have had a remedy five years earlier. I don't think they would have because they withdrew it. They never exhausted under that circumstance. But the courts have been uniform and unequivocal in their treatment of 6440 that this exact theory, the idea that decisions and delays within the administrative process can support a- What if the city intentionally delays awarding a BUI permit or any other permit for legitimate or perhaps illegitimate reasons, like they're covering something up, and they refuse to enter into any sort of settlement or agreeable award that would allow for the awarding of a permit, unless there's a waiver of these 6440 rights that Mr. Wathen was talking about. The end of the process, people, citizens decide to assert their rights, file suit, you award a BUI permit. What remedy do people who are aggrieved by that type of civic incompetence or mendaciousness have to do on their own behalves? That's a very fair question. Again, two responses. One, under Bernbaum, they specifically address that circumstance. So if there's delay that violates a time limit set by law, in that case I think it was 120 days, then you can just bring your 6440 claim within 30 days after that failure to act, which is itself an act. So that's one remedy. The other is that you exhaust your administrative remedies. You don't resolve. You get a decision from the hearing examiner. If that decision is irrational, arbitrary, capricious, then you absolutely have a cause of action under 6440. But, again, the courts have been very uniform in saying that decisions and conduct that happens within the administrative process isn't actionable under 6440. It's a narrow statutory cause of action, and if you think about it, there's some good policy reasons for that. We want error correction. We want candor. We want a factual record developed within the administrative process, and the legislature is certainly aware of the repeated case law saying that, and if they disagreed with it, they could certainly intervene and define 6440 differently. But you'd have to essentially rewrite the statute to get it in conduct within the administrative process. So what Gerlach did wrong is a failure to press forward on the administrative process and get a decision five years before he finally got it. For purposes of 6440, you have to exhaust your administrative remedies. That's just a legislative determination. And, again, the legislature can approve it. And the challenge was to a permit that had been filed under a different statutory regime or ordinance. They're speaking about three different permits as if they're one. The first is the grandfathering one. That was in 2005. They said, we have a permit, or we have this buoy, it's preexisting. It turned out not to be, but that was withdrawn in any event. So that's a non-issue. Nothing happened for about four or five years. Then they sought a permit under the programmatic process. This is sort of a fast-track process with very strict criteria. That makes a lot of sense for your typical buoy, but not for a buoy here, which was at a narrow inlet with shallow water. They were warned at the front end that this might not be the best process for them. They pursued it. In the end, it wasn't a good process. And rather than seeing that through, they agreed to do what they were advised to do at the front end. So that was the permit that was the subject of the hearing before the Administrative Hearing Office? The hearing that never happened, but, yeah, that was the one that was. And so as part of resolving that, they, in essence, withdrew their second permit and sought a third permit under a better process for them, and they got their permit five weeks late. Yes, they struck that appeal, and they pursued the Substantial Shoreline Development Permit, which is a little more involved but much more flexible. So the depth isn't a problem. The construction limit line isn't a problem. And as my friend said, it was unceremoniously granted to them, and that's the end. And under Brouwer, Birnbaum, Coy, and Kalfus, you can't just turn around and bring a 6440 claim. As for the claims about shakedowns and solicitation, I mean, that comes down to a 15-second interaction in Mr. Gerlach's declaration where he said the context was he was heated at the permit counter, told Mr. Machen, you don't even know where I live. Mr. Machen responded, I do know where you live. I wash windows in that area. And from that, we are extrapolating this broad conspiracy to retaliate through the permit process, which Mr. Machen undeniably lacked the authority to do. The denial didn't even come from him. It was signed by Kathy Cook, his supervisor. There were two other... He hasn't been able to take the deposition of Kathryn Cook and has to accept the declaration without cross-examining her. Let me say four things about the continuance. One, they had a year to do this. The complaint was filed in September 2011. The dismissal order came down in, I believe it was August of 2012. There was an additional two months while reconsideration was pending where discovery was still being propounded on us when we were responding to it. A year was certainly within Judge Settle's discretion to say that's enough time. That's one. Two, this is a qualified immunity case where early summary judgment is the rule, not the exception. Three, all of the claims were appropriately dismissed for procedural reasons in any event, so no amount of time in discovery would change that. And four, they never said in the declaration, I want to depose Kathy Cook. I think she's going to say X, Y, Z. It was, I want to depose relevant COBE officials. I want to find a pattern of corruption. That's boilerplate conclusions that have never been sufficient under Rule 56. And then we had the, I want to secure a defendant's private tax records, which to my research is unprecedented for a defendant that didn't put that into issue on his own and unclear how that could ever. What about the request for the history of the issuance of other permits and how long it took to issue? They secured that. Within the record, there's these broad public records requests that were being propounded, I think, even in advance of this lawsuit. So they had an extraordinary amount of information from the city in terms of the permits that were granted and the timing. And they, under state law, they have access to those records and they were dutifully provided. So again, 6440 fails on procedural grounds, as does 1983, in addition to the merits where, again, they're accusing Mr. Machen of something that he didn't do, didn't have the authority to do, couldn't do, and in fact someone else made the final decision. One last question. When you said they had a year to note these depositions, is that a year from the date of the filing of their Kitsap County Superior Court action before it was removed to federal district? It is. That's where I'm counting from. So then you'd certainly deduct a few months during removal and joint status report, but then you'd add a few months for reconsideration period.  I assume less than 30 days. Otherwise, we wouldn't have been able to. Okay. Unless the court has further questions for me, we will submit. I think not. Thank you, Your Honor. Thank you very much. I'll give you a minute on rebuttal. Your Honor, I will be brief. To answer your questions concerning the procedure, the lawsuit was filed in September of 2011 and removed to federal court. That stays litigation and discovery pending that time frame of the conference with counsel and the case scheduling order. But once the discovery was allowed, the summary judgment was filed two months after that date. And the date that counsel gave you. So your point is I really only had two months in which to take all this discovery. Yes, Your Honor. Second, I think the legislature in Washington has made it clear that the remedy under 6440 and using the citation directly from CALFAS says that a cause of action lies for the delay. That's exactly what the court said. And that's what we've alleged. The problem, though, is it's not delay in one permit. It's delay in three, and one of which your clients, for whatever reason, withdrew. And I can answer that, Your Honor. In the 2005 initial application, after two years of Mr. Gerlach continuously going back, they came back to him and said you need to perform a full CEPA review, which on top of everything else was an undaunting financial burden for a simple boat moorie. So given the alternative, he did what he had to do, and that was withdraw his application. People aren't unlimited buckets of money. And unfortunately, then the city created this new program called the Promatic Approach, which the record before the trial court was not that Mr. Gerlach chose to do that. He was advised to do that when he applied for the third permit. There were actually four applications. So he did what the officials told him to do on the Promatic Approach, and on the eve of that hearing, after all was said and done, the city agreed and reverted him back to his original application in 2005. And on the same facts, same submittals, that's the basis that the city finally issued the permit. And they don't dispute that. They agree it was the same submittal from six years earlier. I think we have your arguments in hand. Thank you both very much. The first case just argued is submitted. And the last case, they made me a break. Do you want to recess or, Carlos, no? All right. The last case on the calendar then is Intermec Incorporated versus International Business Machines Corporation, numbers 12-35738 and 35743. Oh, would you like a break? Okay, counsel, we are going to take a break. We'll be back in about ten minutes.
judges: Murphy, Tallman, Bea